IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROLYN CASTILLO,

     Plaintiff,

v.                                          Case No. 1:22-cv-0968-KG-JFR

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, JOHN KUBIAK,
GLORIA LUCERO, JOHN AND JANE DOES 1-10,
and ENTITIES, CORPORATIONS, AND
PARTNERSHIPS 1–10,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter is before the Court on Defendant Allstate Property and Casualty Insurance's

Motion for Judgment on the Pleadings (Doc. 4) and Motion for Sanctions (Doc. 9).  Both

motions are fully and timely briefed.  *See* (Docs. 11,15,16 and 14,17,18).  The Court, having

considered the briefing, applicable law, and the record of this case grants the Motion for

Judgment on the Pleadings and grants the Motion for Sanctions.

I.    *Background*

     This case arises out of a December 13, 2013, car accident.  *See* Complaint (Doc. 1-1) at 4,

¶ 15.[1]  The collision, which was the fault of an underinsured motorist, caused Plaintiff Carolyn

Castillo to suffer injuries, both personal and to her vehicle.  *Id*. at 4–5, ¶¶ 15, 19, 22, 23.  Ms.

---

[1] In accordance with the Rule 12(c) standard, the Court takes the following facts from Plaintiff's Complaint (Doc. 1-1) and assumes they are true.  *See Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012); *also infra* Section II(A).  That said, the Court also cites to Allstate's Answer to show there is no dispute about the facts which are relevant and material to the instant Motion—in particular the dates of events.  The Court also takes judicial notice of certain facts not pleaded, as noted below. To the extent pleaded facts have been omitted, the Court deems them immaterial to the Motion.

Castillo owned auto insurance from Allstate, including an uninsured/underinsured motorist (UM/UIM) policy.  *Id*. at 5, ¶ 24.  Seeking compensation for her injuries and property damage, Ms. Castillo opened a UM/UIM claim with Allstate to cover what the tortfeasor's insurance would not.  *Id*. at 6, ¶ 33; *see also* Answer (Doc. 2) at 4, ¶ 33 (admitting).  Ms. Castillo does not plead the exact date she made her insurance claim, but she does allege that she advised Allstate of her injuries beginning on the date of her 2013 accident, (Doc. 1-1) at 6, ¶ 32, so the insurance claim must have been filed after December 13, 2013, and before March 2015.  The Court infers this because Ms. Castillo's insurance claim proceeded, and she participated in two independent medical examinations requested by Allstate, one on March 13, 2015, and another on February 4, 2016.  *Id*. at 6, ¶¶ 34–35; *see also* (Doc. 2) at 4, ¶¶ 34–35 (admitting).

Nonetheless, and for reasons left unsaid, Ms. Castillo filed a state court UM/UIM action against Allstate on November 15, 2016,  (Doc. 1-1) at 7, ¶ 36, which asked that Allstate "be directed to pay Plaintiff, under the provisions of her Uninsured/Underinsured Motorist coverage, an amount sufficient to compensate Plaintiff for her total damages…," *Castillo v. Rodriguez, et al*, No. D-1314-CV-2016-01027 (13th Jud. Dist., N.M. filed Nov. 15, 2016), available at (Doc. 1-2) at 7.  Within the course of that litigation, on May 25, 2017, Ms. Castillo extended a settlement offer to Allstate for the amount of the UM/UIM policy limits.  (Doc. 1-1) at 7, ¶ 37; *see also* (Doc. 2) at 4, ¶ 37(admitting).  According to Ms. Castillo, Allstate never responded or made a settlement offer of its own.  (Doc. 1-1) at 8, ¶ 49.

Instead, the parties participated in arbitration which, in November 2019, resulted in an award of $425,000.00 for bodily injuries.  *Id*. at 8, ¶ 51.  But, according to Ms. Castillo, Allstate only paid $275,000.00.  *Id*. at 8, ¶ 53.  That is where Ms. Castillo's pleading leaves the issue.  Looking beyond the Complaint, however, it is apparent that a negative inference about Allstate's

conduct or motive would be unfair because it in fact moved to modify the arbitration award on

the grounds that it exceeded the policy limits and it prevailed at the district court, after which

Ms. Castillo appealed to the New Mexico Court of Appeals, which affirmed the district court's

reduction.  *See* Answer (Doc. 2) at 5, ¶ 53 (adding relevant factual allegations); *and* Motion

(Doc. 4) at 3 (explaining litigation history).  The Court takes judicial notice of those state court

proceedings. [2]  *See Castillo v. Allstate Prop. & Cas. Co.*, No. A-1-CA-39107 (N.M. Ct. App.

Oct. 25, 2022).

Shortly after the New Mexico Court of Appeals entered its order regarding the arbitration

award, Ms. Castillo filed the instant action in New Mexico state court—her second consecutive

lawsuit against Allstate.  *See Castillo v. Allstate, et al*, No. D-202-CV-2022-07002 (2nd Jud.

Dist., N.M. filed Dec. 21, 2022), available at (Doc. 1-1).  Her complaint brings seven claims: (1)

violation of the Trade Practices and Frauds Act of the New Mexico Insurance Code (TPFA); (2)

insurance bad faith; (3) breach of the implied covenant of good faith and fair dealing; (4) breach

of contract; (5) injunctive relief (enjoining Allstate from violating its duties and contractual and

legal obligations to Ms. Castillo); (6) declaratory judgment (establishing the rights and

obligations of the parties with respect to the insurance contract); and (7) punitive damages.

(Doc. 1-1) at 9–14.

---

[2] See *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting court "may exercise [its] discretion to take judicial notice of publicly-filed records in . . . certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *and St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts . . . may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Ms. Castillo, in response to the Motion for Judgment, clarifies that her claims are not based in Allstate's refusal to pay the full $425,000 award. (Doc. 11) at 4. Instead, the Complaint alleges the following bases for the claims:

- That Allstate never extended a formal written offer to Ms. Castillo related to her UIM claim, (Doc. 1-1) at 8, ¶ 49;

- That Allstate "without just cause failed to pay, or delayed payment of, claims arising under its policies," *id*. at 10, ¶ 64(a);

- That Allstate "without just cause compels insureds or claimants to accept less than the amount due to them or to employ an attorney to bring suit against the insurer or such an insured to secure full payment or settlement of a claim," *id*. at 10, ¶ 64(b); and,

- That Allstate breached its duty by "failing to timely evaluate and pay Plaintiff's UIM claim," *id*. at 11, ¶ 69.

Or, as she summarizes her legal theory in her Response:

> Defendant Allstate's "failure to pay the full amount of the arbitration award" is not what forms the basis of Ms. Castillo's bad faith claims. What does form the basis of those claims is that Defendant Allstate agreed to provide UIM coverage to Ms. Castillo and then made no formal settlement offer or payment on Ms. Castillo's UIM claim prior to arbitration, at which time the arbitration panel awarded Plaintiff $425,000.00. Pursuant to the Subject Complaint, such conduct on the part of Defendant Allstate constitutes a violation of the Trade Practices and Frauds Act (hereinafter "TPFA") and the Insurance Code, insurance bad faith, breach of the implied covenant of good faith and fair dealing, and breach of contract.

(Doc. 11) at 4.

Allstate removed the case to this court, *see* Notice of Removal (Doc. 1), answered, *see* (Doc. 2), and filed the subject motions seeking judgement and sanctions.[3] Allstate argues that all

---

[3] Though Ms. Castillo never challenged this Court's jurisdiction, the Court independently notes diversity jurisdiction because (1) Ms. Castillo is a citizen of New Mexico, (Doc. 1-1) at 1, ¶ 1; (2) Allstate is incorporated in and has its principal place of business in Illinois, (Doc. 1) at 2; and

Ms. Castillo's claims are barred either by the relevant statutes of limitations or by claim preclusion because of the first lawsuit. *See generally* (Doc. 4). And, arguing the claims lack evidentiary support or a legal basis, Allstate urges Rule 11 sanctions be imposed. *See generally* (Doc. 9).

Ms. Castillo responds that her claims accrued later than Allstate claims they do and thus are not time barred. (Doc. 11) at 5. Her theory relies substantially on the application of the "discovery rule," which the Court discusses below. Ms. Castillo also argues that this lawsuit does not attempt to relitigate the propriety of Allstate's $275,000 payment and is instead about "the timing of that payment and the hoops through which Ms. Castillo had to jump in order to obtain it," and thus is not precluded. *Id*. at 9.

Allstate replies that the discovery rule does not apply to these claims, and even if it did, Ms. Castillo could have and should have "discovered" her claims earlier than she did. (Doc. 15) at 6–9. Allstate also urges that even if the current claims are facially distinct legal theories, they arise out of the same nucleus of operative facts as the first lawsuit, were required to be brought with the first lawsuit, and are prohibited now. (Doc. 15) at 1.

The Court first addresses the Motion for Judgment on the Pleadings and, second, adjudicates the Motion for Sanction.

II.     *Motion for Judgment on the Pleadings*

The Court is presented two primary questions by the Motion for Judgment: when these claims accrued for purposes of the statute of limitations and whether these claims are precluded

---

(3) Allstate has shown by a preponderance of the evidence that Ms. Castillo seeks compensatory damages, punitive damages, costs, fees, and interest which would possibly, if not likely, exceed $75,000, (Doc. 1) at 8–11. *See* 28 U.S.C. §§ 1332 and 1441; *also McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (preponderance of evidence standard).

by the prior lawsuit.  The Court concludes that no material facts are in dispute and that each of

Ms. Castillo's substantive claims are barred by the relevant statutes of limitations.  Having

reached that dispositive conclusion, the Court does not reach the question of claim preclusion.

Because the analysis varies according to claim, the Court addresses each in turn after explaining

the relevant law.

> A.    *Legal Standard*

Judgment on the pleadings is appropriate "when the moving party has clearly established

that no material issue of fact remains to be resolved and the party is entitled to judgment as a

matter of law."  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir.

2012) (citation omitted).  In analyzing a Rule 12(c) motion, the Court should "accept all facts

pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings

in that party's favor."  *Id*. (citation omitted).

> B.    *Legal Background*

"A statute of limitations establishes the time, after a cause of action arises, within which a

claim must be filed."  *Cummings v. X-Ray Assocs. of New Mexico, P.C.*, 1996-NMSC-035, ¶ 49.

"A statute of limitations begins to run when the cause of action accrues…."  *Id*.  "Limitations

periods are intended to encourage plaintiffs to diligently pursue a claim[.]"  *Est. of Brice v.

Toyota Motor Corp.*, 2016-NMSC-018, ¶ 16.

As a preliminary matter, the Court notes New Mexico law governs.  A federal court

sitting in diversity "applies the substantive law of the state where it is located, including the

state's statutes of limitations."  *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th

Cir. 2013) (citing *Burnham v. Humphrey Hospitality Reit Trust, Inc.,* 403 F.3d 709, 712 (10th

Cir. 2005)).  The parties dispute whether the discovery rule applies to this case, so the Court also

notes that it "must also apply the state's tolling rules [including the discovery rule], as they are an integral part of the several policies served by the statute of limitations." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Boellstorff,* 540 F.3d 1223, 1228 (10th Cir. 2008)).[4]

The Court also notes that an accrual date may be determined as a matter of law.  "Where essential facts are not in dispute, the accrual date for a cause of action for limitations purposes is a pure question of law." *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 7; *see also Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 15 ("In the absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitations is a judicial determination."); *and Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1245 (D.N.M. 2019) (dismissing time-barred claims where the plaintiff admitted key dates in her amended complaint).

Moving on, Ms. Castillo invokes the "discovery rule" as a means of defeating the statute of limitations defense raised by Allstate.  The discovery rule is a way of delaying accrual of a claim.  The date from which the statute of limitations begins to run may be extended by New Mexico's discovery rule, under which a "cause of action does not accrue until the plaintiff discovers" the injury or claim.  *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013) (quoting *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 18).  But the discovery rule is qualified in multiple ways.

First, discovery does not describe the moment a plaintiff becomes actually aware of their claim.  Instead, it is defined by "inquiry notice," *Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 9,

---

[4] The Court acknowledges that the New Mexico Supreme Court has since explained that the discovery rule is not a tolling mechanism, precisely, but either way it is clear that state law governs the issue.  *See Est. of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶ 13 (holding that, unlike fraudulent concealment or equitable tolling, the "discovery rule actually serves to set the date on which a cause of action accrues.").

or the time a plaintiff could have been aware of their claim with reasonable diligence. "Discovery" is defined as the "discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of [the]…injury." *Elm Ridge Expl. Co.*, 721 F.3d at 1210 (quoting *Wilde*, 2010-NMCA-085, ¶ 18).  "[A] reasonable-person standard will be applied as to whether [a plaintiff] should have known of the [injury]." *Id.* (quoting *Wilde*, 2010-NMCA-085, ¶ 18).  Even then, "[t]he limitations period is not tolled simply because a plaintiff does not know the full extent of her injury; the statute begins to run once she knows or should know sufficient facts to constitute a cause of action." *Martinez-Sandoval v. Kirsch*, 1994-NMCA-115, ¶ 26. Stated as a simple standard: "In New Mexico, a cause of action arises when the plaintiff discovers or with reasonable diligence *should have discovered* that a claim exists." *McNeill v. Burlington Res. Oil & Gas Co.,* 2008–NMSC–022, ¶ 37 (internal quotation marks and citation omitted) (emphasis added).

Second, a plaintiff invoking the discovery rule bears the burden.  A plaintiff must "demonstrate that if she had diligently investigated the problem she would have been unable to discover the cause of her injury." *Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 22.  A plaintiff has the burden of alleging in their complaint, or responding to a dispositive motion with, factual allegations that, if proved, would support application of the discovery rule. *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 28.

Finally, the discovery rule does not apply to all claims.  Ms. Castillo implies that under New Mexico law, the discovery rule applies as a matter of course, affecting the start date of any cause of action.  (Doc. 11) at 5 ("The statute of limitations commences when an 'injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs'" and "New Mexico applies the 'discovery rule,' which means that the statute of limitations period 'begins to

run when the claimant has knowledge of sufficient facts to constitute a cause of action.'")
(quoting *Anderson Living Trust v. Energen Res. Corp.*, No. 13-CV-00909 KBM-CG at *30 (D.
N.M. Nov. 25, 2014)).  But this is not an accurate description of New Mexico law.

New Mexico courts have applied the discovery rule only to certain claims, usually where
the wrongdoing may be obscured from view or an injury may not manifest immediately, such as
in certain personal injury, professional negligence, fraud, or concealment cases.  *See Roberts v.
Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶¶ 20–28 (adopting discovery rule for claims
governed by NMSA § 37-1-8, the three-year statute of limitations for personal injury tort
claims); *Sharts v. Natelson*, 1994-NMSC-114, ¶ 11 (applying discovery rule to legal
malpractice); *Martinez-Sandoval v. Kirsch*, 1994-NMCA-115 (applying discovery rule to sexual
abuse and sexual exploitation claim until the point substantial injuries—*i.e.*, acquisition of
venereal disease and pregnancy—became known to plaintiff); *Martinez v. Showa Denko, K.K.*,
1998-NMCA-111 (holding discovery rule applies to products liability action); *Maestas v. Zager*,
2007-NMSC-003, ¶ 19 (holding discovery rule applies to medical malpractice claims brought
under the New Mexico Tort Claims Act); *New Mexico Pub. Sch. Ins. Auth. v. Arthur J.
Gallagher & Co.*, 2008-NMSC-067, ¶¶ 36–37 (holding discovery rule delayed professional
negligence claim against broker for negligently drafting insurance policies until actual liability
attached to plaintiff under flawed policy); *Gerke v. Romero*, 2010-NMCA-060, ¶ 8 (applying
discovery rule to claims of toxic substance exposure); *Wilde v. Westland Dev. Co.*, 2010-NMCA-
085, ¶ 18 (applying discovery rule to fraud and conversion claims).

On the other hand, New Mexico courts have excluded the discovery rule from the
statutory three-year statute of repose for medical malpractice claims brought pursuant to the
Medical Malpractice Act, *Tomlinson v. George*, 2005-NMSC-020, ¶ 26, and from Uniform

Commercial Code-based implied warranty claims, *Badilla v. Wal-Mart Stores E. Inc.*, 2015-NMSC-029, ¶ 23 ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.").  Because the discovery rule does not apply to all claims, the first step in any analysis must be to determine whether the rule is applicable at all.

With that in mind, the Court turns to analyzing each claim.  As a reminder, Ms. Castillo filed the current claims November 21, 2022, so that is the end-date from which all time periods will be calculated.  (Doc. 1-1).

C.  *TPFA Claim*

TPFA claims are governed by the four-year statute of limitations found in NMSA § 37-1-4.  *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 44.  The parties agree on this point.  *See* (Doc. 4) at 5; (Doc. 11) at 6.

They do not agree, however, when the claim accrued.  Allstate argues that Ms. Castillo must have known of any alleged TPFA violation by the time she brought her initial UIM claim on November 15, 2016.  (Doc. 15) at 8.  Ms. Castillo, on the other hand, asserts that her TPFA claim accrued either when the arbitration award was entered, or when final judgment was entered in the prior UIM litigation—that is, either November 8, 2019, or May 19, 2020.  (Doc. 11) at 6. She argues that before that date she had not proven that she was entitled to recover damages from Allstate.  *Id*.

Under New Mexico law, a claim for statutory violations accrues *when the violation occurs*.  *Smith v. Galio*, 1980-NMCA-134, ¶ 9 (emphasis added).[5]  (Doc. 11) at 6.  Putting Ms.

---

[5] The Court notes that Ms. Castillo cites the same rule, (Doc. 11) at 6, though she abandons it for her argument that the claim accrued when she won the arbitration award.

Castillo's Response aside for a moment, in her Complaint she alleges that Allstate violated the TPFA in two ways.  First, that Allstate "without just cause failed to pay, or delayed payment of, claims arising under its policies."  (Doc. 1-1) at 10, ¶ 64(a).  And second, that Allstate "without just cause compels insureds or claimants to accept less than the amount due to them or to employ an attorney to bring suit against the insurer or such an insured to secure full payment or settlement of a claim."  *Id.* at 10, ¶ 64(b).

By necessity, those alleged violations must have occurred after Ms. Castillo opened her insurance claim and before or simultaneous to the date Ms. Castillo initiated the 2016 litigation. That is, Allstate's "failure to pay" or "delayed payment" of the claim was the predicate to the UIM claim.  And to the extent Allstate compelled Ms. Castillo to "employ an attorney to bring suit" that violation also occurred at or before the time the suit was brought.  The Court is unaware of any alternative rule that a TPFA claim does not accrue until a plaintiff judicially proves it is entitled to UIM benefits, nor does Ms. Castillo cite to any such rule.[6]  Thus, the Court concludes that the TPFA claim accrued by November 15, 2016, at the latest, and the four-year limitations period ran in November 2020—two years before this case was brought.

---

[6] To avoid confusion, the Court addresses the New Mexico Supreme Court's holding that a "third-party claimant's [TPFA] cause of action against the insurer for unfair settlement practices must await the conclusion of the underlying negligence action between the claimant and the insured." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 26.  That holding applied specifically to fact patterns involving third-party plaintiff/victims bringing TPFA claims against the insurer of a tortfeasor/insured.  There, a judicial finding of liability of the tortfeasor to the third-party victim must precede any finding of an insurer's violation of duties to the third-party.  Here, no such concern exists because Allstate is Ms. Castillo's insurer and owed duties to her directly.  The New Mexico Supreme Court acknowledged as much in the same case.  *See id.* ¶ 18 (distinguishing "cases where only the insurer and insured are involved, such as claims for uninsured motorist coverage…").

Finally, the discovery rule cannot delay the accrual date. The Court finds no caselaw applying the discovery rule to this statutory claim, nor did Ms. Castillo cite to any. Even if the discovery rule did apply, Ms. Castillo has not met her burden of showing she could not have discovered her TPFA claim earlier than her claimed accrual date. For these reasons, the accrual date is November 15, 2016. The TPFA claim is time barred.

D. *Breach of Contract and Breach of Implied Warranties Claims*

Under New Mexico law, actions founded upon a written contract must be brought within six years. NMSA 1978 § 37–1–3. Once again, the parties agree about the length of the limitations period. *See* (Doc. 4) at 5; (Doc. 11) at 6. New Mexico courts explain that a contract claim accrues at the time of the breach. *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 11 ("It is a fundamental principle of contract law that the statute of limitations on a breach of contract claim runs from the date the contract is breached." (Text only)).

Ms. Castillo asserts that the breach in this case (*i.e.* failure to perform) occurred after she made her settlement offer and Allstate failed to negotiate—that is, May 25, 2017—because before that date, no settlement negotiations occurred and therefore Allstate was not required to perform a contractual obligation. (Doc. 11) at 7. The problem with that view is that bringing a UIM claim required there to have already been a breach of contract. "New Mexico case law and public policy support our conclusion that a cause of action for UIM coverage begins to accrue when the insurance contract is breached." *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 10. That is, any breach (*i.e.* Allstate's failure to perform contractual obligations) necessarily preceded the UIM claim.

That is essentially what Allstate argues: "[Ms. Castillo] acknowledged that there was a [contract] dispute when Plaintiff initiated litigation and asserted [the UIM] claim in 2016. At

12

that moment, if not earlier, the statute of limitations began running on her contractual claim."
(Doc. 15) at 6.  The Court agrees.  The 2016 UIM claim, which sought enforcement of the
insurance obligations, implied a breach of contract. [7]  So, any breach of contract claim must have
accrued by November 15, 2016, at the latest, and the limitations period ended on November 15,
2022, which is before this claim was filed on November 21, 2022.[8]

Once again, the discovery rule does not save this claim.  Ms. Castillo did not cite to any
New Mexico cases applying the discovery rule to simple contract cases, and this Court finds
none.  The Tenth Circuit employed the discovery rule in a New Mexico-based contract case
once, but it was a case involving fraudulent concealment, making the discovery rule appropriate.
*See Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1211–12 (10th Cir. 2013).  This case involves
no allegations of concealment of any wrongdoing.  And either way, Ms. Castillo had sufficient
knowledge of the breach of contract to bring a UIM claim in 2016, thus satisfying the discovery
rule if it applied here.  The breach of contract and breach of implied warranties claims accrued
by November 15, 2016, and are, therefore, time barred.

E.  *Bad Faith Claim*

Both parties state that a six-year statute of limitations is applicable to insurance bad faith
claims.  *See* (Doc. 4) at 5; (Doc. 11) at 6.  The Court agrees that New Mexico courts would likely

---

[7] The Court notes without deciding that this analysis potentially implicates claim and/or issue
preclusion issues as well.

[8] The six-day gap between the limitations period end date and the filing of the claim may seem
like a mere trifle.  But if the purpose of statutes of limitations is to be realized, there must be a
hard end date and no exceptions for being close.  Indeed, in New Mexico statutes of limitations
and exceptions to them are to be "strictly construed."  *Regents of Univ. of N.M. v. Armijo*, 1985-
NMSC-057, ¶ 5.  Moreover, November 15, 2022, is the latest and most generous view of the
cutoff date in this case.  Realistically, the breach of contract must have occurred before filing of
the UIM claim, and the claim accrued and spoiled earlier than calculated here.

impose the six-year statute of limitations for contract claims to bad faith claims. *See Martinez v. Cornejo*, 2009-NMCA-011, ¶ 36 (acknowledging that "[t]he majority of authorities and courts agree that the statute of limitations applicable to written contracts, and not torts, controls bad faith actions against insurers.").

The parties, of course, disagree about when the six-year period began. Allstate avers that in any action premised upon a UIM claim, the claim accrues when "agreement between the parties as to the value of the UIM claim failed." (Doc. 4) at 6 (citing *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 19). Under this rule, Allstate theorizes, there was obvious disagreement about the value of the claim upon the first independent medical evaluation in March 2015, and at the latest there was definitive disagreement when Ms. Castillo filed her UIM lawsuit in 2016. *Id.* Either way, the instant lawsuit came more than six years later. For her part, Ms. Castillo urges that the bad faith claim only accrued on May 25, 2017. (Doc 11) at 7. Invoking the discovery rule, Ms. Castillo argues that she did not become aware of the absence of good faith by Allstate until she first extended a settlement demand and it failed to respond. *Id.* at 7–8.

Though Allstate references general UIM claim rules and Ms. Castillo asserts the discovery rule, neither party states definitively when a bad faith claim accrues, and the Court is unaware of a clear statement of New Mexico law on point. The Court considers first that the longer, six-year, limitations from contract actions applies, which implies an occurrence-dated accrual. But the Court also considers that bad faith sounds in tort rather than contract, *Chavez v. Chenoweth*, 1976-NMCA-076, ¶ 31, and with tort actions "[d]epending on the nature of the claims asserted and the context out of which they arise…claims may accrue at the time of the occurrence, the time of injury, or the time of discovery," *Williams v. Stewart*, 2005-NMCA-061,

14

¶ 11.  The Court concludes, however, that it need not predict the precise law on point because whether defined by occurrence or discovery, Ms. Castillo's claim falls outside the six-year statute of limitations.

Starting with the date of occurrence, the Court notes that insurance bad faith "means a frivolous or unfounded refusal to pay."  *Chenoweth*, 1976-NMCA-076, ¶ 31.

> "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer "*utterly* fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

*Jackson Nat. Life Ins. Co. v. Receconi*, 1992-NMSC-019, ¶ 56 (quoting *Jessen v. Nat'l Excess Ins. Co.*, 1989-NMSC-040, ¶ 14, *overruled on other grounds by Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 25).  As with the breach of contract claim, any "unfounded" or "frivolous" refusal to pay must have begun after the insurance claim was opened and before the initiation of the 2016 UIM lawsuit; without a refusal to pay, no UIM litigation would have been necessary.  Ms. Castillo's own Complaint supports this interpretation where it alleges that Allstate "breached its duty to act honestly in good faith in the performance of the insurance contract by failing to timely evaluate and pay Plaintiff's UIM claim."  (Doc. 1-1) at 11, ¶ 69.  Any such failure to evaluate or pay, as pleaded, preceded the settlement negotiation that Ms. Castillo now claims constitutes the bad faith action.  Moreover, even assuming as true that Allstate declined to negotiate a settlement before arbitration, simple refusal to settle is not *ipso facto* evidence of bad faith.  *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 20 ("To be entitled to recover for bad-faith failure to settle, a plaintiff must show that the insurer's refusal to settle was based on a dishonest judgment.").  So, evaluated by date of occurrence, any

bad faith, to the extent it did occur, must have occurred and accrued after opening the insurance

claim and, at latest, by the 2016 filing of the UIM action.[9]  This places the current lawsuit

outside the six-year window.

The analysis does not change if the discovery rule is applied.  Ms. Castillo has not carried

her burden of proving she could not have discovered any frivolous refusal to pay before 2017.

The Court determines that by the time she brought her 2016 UIM claim, Ms. Castillo either

knew—which is exactly what her Complaint implies—or reasonably should have known that a

bad faith claim was implicated.  For all these reasons, the Court concludes the bad faith claim

accrued by November 15, 2016, and is time barred.

F.  *Declaratory Judgment*

A declaratory judgment action requires an "actual controversy," such that if the statute of

limitations related to viable claims has expired so, too, has the right to bring a declaratory

judgment action.  *See Am. Fed'n of State v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 2016-

NMSC-017, ¶ 15 ("[C]ourts in New Mexico have jurisdiction to adjudicate and declare rights

and legal relations only in cases of actual controversy."); *also City of Albuquerque v. Ryon*,

1987-NMSC-121, ¶ 9, 106 N.M. 600, 747 P.2d 246 (stating "declaratory judgment actions are

not intended to provide a substitute for other available actions" and upholding dismissal of a

declaratory judgment action where the underlying claims were time-barred); *and Van Auken v.

Catron*, No. 31,961, 2013 WL 596658 at *3 (N.M. Ct. App. Jan. 7, 2013) (unpublished)

(interpreting New Mexico's Declaratory Judgment Act to require an "actual controversy" which

---

[9] The Court again notes without deciding that this analysis potentially implicates claim and/or issue preclusion issues.

excludes time-barred claims).  Here, because all substantive claims are precluded by the statutes

of limitations, the declaratory judgement is also precluded.

G.  *Injunctive Relief and Punitive Damages*

Plaintiff's remaining claims, which are for injunctive relief and punitive damages, are

remedies rather than stand-alone claims.  *See Flor v. Bd. of Reg. of Univ. of N.M.*, 539 F. Supp.

3d 1176, 1201 (D.N.M. 2021) ("[I]njunctive relief is a form of remedy, not a standalone

claim[.]"); *Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 34 ("Injunctive

relief is not a separate claim, but is only available where the underlying claim is meritorious.");

*Mason v. Texaco, Inc.,* 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not

an independent cause of action or issue separate from the balance of a plaintiff's case.");

*Sanchez v. Clayton*, 1994-NMSC-064, ¶ 12 ("An award for punitive damages must be supported

by an established cause of action.").  As such, these "claims" cannot stand without any surviving

substantive claims and must be dismissed.

H.  *Costs and Fees*

In its Motion for Judgment, Allstate requests that the Court award it costs and fees

incurred in defending the claims brought.  (Doc. 4) at 7.  It invokes the TPFA fee-shifting statute

for the authority to award costs and fees.  *Id*. (citing NMSA 1978 § 59A-16-30).

The TPFA allows costs to the prevailing party as a matter of course.  "Costs *shall* be

allowed to the prevailing party unless the court otherwise directs."  NMSA 1978 § 59A-16-30

(emphasis added).  The Court, therefore, concludes Allstate is entitled to costs.

The TPFA additionally authorizes attorneys' fees, at the Court's discretion:  "The court

*may* award attorneys' fees to the prevailing party if…the party complaining of the violation of

that article has brought an action that he knew to be groundless."  *Id*. (emphasis added).

Because Ms. Castillo's TPFA claim was clearly time-barred, Allstate argues it should be deemed "groundless" for purposes of awarding fees.  (Doc. 4) at 7.  According to the New Mexico Supreme Court, a "claim is groundless if the allegations in the complaint…are not in good faith discoverable through litigation." *City of Farmington v. L.R. Foy Const. Co.*, 1991-NMSC-067, ¶ 15.  A claim may be groundless even if it is "sufficient to survive a motion to dismiss for failure to state a claim." *Id.*  But objective groundlessness of the claim is not enough to merit sanction because "the statute expresses the clear legislative intent that for plaintiffs to be sanctioned with attorneys' fees it must be shown they subjectively knew at the time the suit was filed that the complaint was groundless." *Id.* ¶ 13.  Therefore, "plaintiffs are subject to Section 59A–16–30 fee sanctions if they have brought suit knowing they can present no legal argument to support the claim." *Id.*  ¶ 15.  The Court cautioned that "[t]he groundlessness of a suit should not be determined in retrospect" because a "claim may appear meritorious to a plaintiff" initially and only as "facts and legal theories develop it may become apparent that the suit is in fact groundless." *Id.* ¶ 14.  Thus, dismissal of claims is not necessarily evidence of groundlessness. *Id.*  Where the subjective knowledge of a plaintiff is unknown or in dispute, an evidentiary hearing is appropriate. *Id.* ¶¶ 24–25.

Ms. Castillo, in response, argues that the TPFA claim is only one of several claims and was timely filed, anyway.  (Doc. 11) at 9–10.  Further, she asserts that Allstate seeks to "deceive this Court regarding the timeliness of Ms. Castillo's claims." *Id.* at 10.  She additionally requests fees and costs for having to respond to the Motion. *Id.*

The Court concludes first that the TPFA claim brought here was objectively groundless. The TPFA claim, according to the facts and legal theories alleged, was patently time-barred.  The TPFA has a four-year statute of limitations, as Ms. Castillo acknowledges.  TPFA violations

accrue at the time of the violation.  The violations of the TPFA as alleged in the complaint all occurred before the 2016 litigation.  This renders the claim time-barred by more than two years.  Making matters worse, her argument on the briefing—that the claim did not accrue until she won her arbitration award—is legally unsupported and clearly contradicted by the actual rule, which Ms. Castillo cited before abandoning it.

The Court next concludes, however, that it lacks evidence of subjective knowledge of the groundlessness.  The Court considers that there is evidence sufficient to draw inferences as to Ms. Castillo's subjective knowledge.  For example, her pleaded facts make her TPFA claim obviously time-barred.  Moreover, her argument in her briefing on the Motion disregards her own pleading and offers a new, legally unsupported, theory for calculating the accrual date, as if to acknowledge there was no meritorious argument available on the pleadings.  The New Mexico Supreme Court's order in *L.R. Foy Const. Co.*, 1991-NMSC-067, ¶¶ 24–25, requiring an evidentiary hearing, however, implies that mere inferences drawn from the paper are insufficient.  The Court, therefore, cannot find subjective knowledge at this point.  Because Allstate also filed a motion for sanctions, the Court declines to hold an evidentiary hearing on this matter at this time.  The Court awards costs but otherwise denies the request for fees under the TPFA.

III.    *Motion for Sanctions*

Allstate, in a separate Motion, urges sanctions under Rule 11.  (Doc. 9).  Having considered the applicable law and the record of this case and those that preceded it, the Court grants the Motion for Sanctions.

A.    *Procedural Background*

Allstate urges Rule 11 sanctions be imposed because, as it argues, Ms. Castillo's claims lack factual support and are legally baseless if not frivolous, including being clearly time-barred.

(Doc. 9) at 4–7 (citing Rule 11(b)(3)).  Allstate also argues that the Complaint evinces a lack of candor by omitting the last three years of the parties' litigation history, including the fact that Allstate's payment of $275,000 instead of $425,000 was supported by a judicial order and appellate review.  *Id.* at 7–8.

Plaintiff's attorneys[10] respond that Allstate "has now added another layer of deceit to its prior misrepresentations to this Court."  (Doc. 14) at 1.  They argue that clearly established law prohibits sanctions; that the pled claims are legally justified, timely, and factually supported; that they did not lack candor; and that they should be awarded fees and costs for defending the Motion.  *Id.*  The Court notes two issues in the briefing.

First, regarding the alleged lack of candor, Counsel simply rejects the premise, stating "it is apparent from the Subject Complaint that neither the above-referenced dispute regarding payment nor the subsequent related legal proceedings have any bearing on Ms. Castillo's claims against Defendant Allstate."  (Doc. 14) at 9.  The Court disagrees.  If the legal proceedings related to the arbitration award are irrelevant, then so too is the amount of money Allstate paid via arbitration, which Counsel included without context.  Pleading that Allstate did not pay the full arbitration award without fully explaining the litigation history invited an unfair negative inference about Allstate's conduct, and potentially side-stepped claim preclusion issues.  Given the facial merit of the lack of candor allegation, the Court deems this response rejecting the

---

[10] In this Section, the Court will refer to Ms. Castillo's attorneys rather than Ms. Castillo because: "The sanction should be imposed on the persons--whether attorneys, law firms, or parties--who have violated the rule or who may be determined to be responsible for the violation. The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment).

allegation inadequate.  At best it was a missed—and waived—opportunity to express contrition or explain.  At worst, it evinces a lack of good faith in addressing the issue.

Second, as for why sanctions are legally prohibited, Counsel asserts that under Tenth Circuit law, the federal Rule 11 standard cannot apply to complaints filed in state court because at the time of the signature, "the signer is not subject to the Federal Rules of Civil Procedure." (Doc. 14) at 5 (quoting *Griffen v. City of Oklahoma City*, 3 F.3d 336, 339 (10th Cir. 1993)).  But, as Allstate points out, the *Griffen* case went on to hold that a federal court can issue sanctions under the parallel state rule, Rule 1-011 NMRA.  (Doc. 17) at 1–2 (citing *Griffen*, 3F.3d at 341).  Not to mention that Plaintiff's counsel has reiterated the allegations from their Complaint in their motions practice before this Court, which means they cannot disown their arguments or avoid liability on technicality now.  *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) (explaining that "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court…it would be viewed as 'presenting'--and hence certifying to the district court under Rule 11--those allegations.").  So, confronted with an allegation of legally baseless claims, Counsel not only argues for a lack of liability on procedural technicality, but does so via a *misstatement of the law*.

B.     *Legal Background*

Pursuant to Fed. R. Civ. P. 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."  Under Rule 11(b), an attorney, by presenting a signed pleading to the court,

> certifies to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Unlike under the TPFA fee-shifting standard, with Rule 11 sanctions, "a district court must apply an objective standard." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991) (citing *White v. General Motors Corp.,* 908 F.2d 675, 680 (10th Cir.1990); *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988)). The Court "must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Id*. "A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances." *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) (citation omitted). The standard implies a duty to check-and-see before filing a claim: "If, *after reasonable inquiry*, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11." *Adamson*, 855 F.2d at 672 (citation omitted) (emphasis added).

Any sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on

motion and warranted for effective deterrence, an order directing payment to the movant of part
or all of the reasonable attorney's fees and other expenses directly resulting from the violation."
*Id*.   The Court has other sanctions available to it "such as striking the offending paper; issuing
an admonition, reprimand, or censure; requiring participation in seminars or other educational
programs;" or "referring the matter to disciplinary authorities." Fed. R. Civ. P. 11 Advisory
Committee Notes (1993 Amendment).  Finally, in cases such as this one, where sanctions are
requested via motion, the Court "may award to the prevailing party the reasonable expenses,
including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

The Court may consider the following factors in determining the appropriate remedy: (1)
whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of
activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular
count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5)
whether it was intended to injure; (6) what effect it had on the litigation process in time or
expense; (7) whether the responsible person is trained in the law; (8) what amount, given the
financial resources of the responsible person, is needed to deter that person from repetition in the
same case; and (9) what amount is needed to deter similar activity by other litigants.  Fed. R.
Civ. P. 11 Advisory Committee Notes (1993 Amendment).

An order imposing a sanction must describe the sanctioned conduct and explain the basis
for the sanction.

C.     *Analysis*

The Court concludes sanctions are warranted in this case.  Before the analysis, the Court
addresses several preliminary requirements.  Allstate avers that it served its Motion for Sanctions
on Plaintiff's attorneys and allowed them the 21-day safe harbor required under Rule 11(c)(2).

(Doc. 9) at 1; *also id*. Ex. A.  Counsel voluntarily dismissed the two attorney defendants, (Doc. 10), but otherwise declined the safe harbor opportunity and responded to the Motion in opposition, (Doc. 14).  Counsel has had notice and reasonable opportunity to be heard as required by Fed. R. Civ. P. 11(c)(1).  And, with the below analysis, the Court describes the sanctioned conduct and basis for the sanction in accordance with Fed. R. Civ. P. 11(c)(6).

The Court determines Plaintiff's counsel violated Rule 11(b)(2) by pleading and arguing legally unsupported and unsupportable positions.  The Court additionally concludes counsel violated the duty of candor, Rule 16-303(A)(2) NMRA, by omitting prior litigation between the two parties, and Rule 11(b)(3) where its pleading is factually insufficient.  The Court considers not only the Complaint, but all the following conduct in totality in determining sanctions are merited:

- Pleading allegations which were patently time-barred given the facts pled, *see supra* Sections II(C)–(E), (H);

- Making an argument, in response to the Motion for Judgment, which was legally untenable by asserting an unsupported legal standard for TPFA claim accrual, *see supra* Section II(C), rather than amend the Complaint, dismiss the claim voluntarily, or otherwise address the legal merit of the claim;

- Making an argument, in response to the Motion for Judgment, which ignored the facts pled in the Complaint by changing the insurance bad faith theory from a pre-2016 failure-to-evaluate-and-pay theory to a post-2016 refusal-to-settle theory, *see supra* Section II(E), rather than amend the Complaint, dismiss the claim voluntarily, or otherwise address the legal merit of the claim;

24

-        Making a legally insufficient argument, in response to the Motion for Judgment, by urging the discovery rule without fully explaining the caselaw, acknowledging its limits, proving its applicability, or attempting to meet the burden of showing a claim could not have been discovered earlier, *see supra* Sections II(B)–(E);

-        Pleading incomplete facts, and evincing a lack of candor, about prior relevant litigation which invited a negative inference about Allstate, *see supra* Sections I, III(A);

-        Failing to adequately explain the lack of factual candor in response to Motion for Sanctions, *see supra* Section III(A);

-        Ignoring inapposite statements of law in its own cited cases, to argue against sanctions on procedural technicality, after being accused of legally insufficient pleading, *see id*;

-        Accusing defendant of deceiving the Court without justification, *see supra* Sections II(H), III(A).

Having found violations of Rule 11(b), the Court must determine the appropriate sanction.  Referencing the factors enumerated in the Section above, the Court determines a reasonable and competent attorney, conducting appropriate due diligence, would not believe in the merit of the claims and arguments presented.  The Court notes that the errors and omissions have been persistent across the litigation.  Surely, mistake can be ruled out.  Rather than an isolated mishap or mere negligence, the Court sees a pattern approaching, if not fully arrived at, willfulness.  The Court also notes that given the opportunity to address deficiencies, counsel doubled down on their claims and declined to admit fault, amend or dismiss the complaint, or adequately explain their conduct (or claims) in a reasonable way.  In fact, rather than take responsibility, Plaintiff's attorneys have accused opposing counsel of misleading the Court without justification.  Taken together, this conduct evinces a troubling pattern of carelessness

regarding legal research, disregard for the legal merit of arguments, and flippancy regarding the Court's and the opposing party's time, resources, and intelligence.

The Court admonishes counsel for its failure to conduct research and exercise judgment in bringing nonviable claims; for doubling down on unsupported legal arguments; for raising argument in briefing which conflicted with the allegations in the Complaint; and for failing to exercise factual and legal candor to the Court where facts or caselaw went against their position.

The Court concludes that a relatively strong penalty is merited and that paying reasonable attorney's fees to Allstate for defending these claims is an appropriate sanction.  Given the time and money expended adjudicating these questionable claims, fees are a logical sanction which rights the wrong.  And given the weight of the rule violations, it is a punishment which is sufficient to deter but not excessive.  The Court will use the lodestar method to determine the reasonableness of fees and therefore will require Allstate to file an affidavit detailing its lawyers' hours and justifying the reasonableness of its rates.

The Court reiterates that monetary sanctions must not be imposed "against a represented party."  Fed. R. Civ. P. 11(c)(5).  " Monetary responsibility for such violations is more properly placed solely on the party's attorneys."  Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment).  And a law firm must be held jointly responsible for a violation committed by its lawyers.  Fed. R. Civ. P. 11(c)(1).

IV.   *Conclusion*

The Court concludes that Allstate has met the following burdens.  First, no material dispute of fact exists because the facts which are relevant and material to determining the statutes of limitations questions—that is, the dates of different occurrences—are undisputed in this case. Second, Allstate is entitled to judgment because the Court determines, as matters of law, that

each claim accrued and expired prior to filing this action.  The remaining non-substantive claims also fail as matters of law.  The Court additionally concludes that Plaintiff's counsel violated Rule 11 and the duty of candor, and it imposes sanctions.  The Court, therefore:

(1)     grants Defendant Allstate's Motion for Judgment on the Pleadings (Doc. 4);

(2)     dismisses all claims with prejudice as time-barred;

(3)     awards costs to Allstate related to defending against the TPFA claim pursuant to § 59A-16-30;

(4)     grants the Motion for Sanctions (Doc. 9);

(5)     orders Plaintiffs counsel, and their firm, to pay reasonable attorneys fees to Allstate in an amount to be determined;

(6)     orders Allstate to file a fees and costs affidavit, including all hours and rates, no later than 14 days after entry of this Order; and

(7)     orders Plaintiff Carolyn Castillo and counsel to file objections to the fees and costs affidavit, if any, no later than 14 days after Allstate files it.

This case shall remain open until final disposition of all sanctions issues and the Court will enter judgment at a later date.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE